UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                           :

UNITED STATES OF AMERICA,      :

                          :        20 Cr. 330 (AJN)

         v.              :

                          :

GHISLAINE MAXWELL,      :

                          :

           Defendant.    :

                          :

                          :
--------------------------------------------------------x


## MEMORANDUM OF GHISLAINE MAXWELL
## IN SUPPORT OF MOTION TO DISMISS THE SUPERSEDING INDICTMENT
## <u>AS IT WAS OBTAINED IN VIOLATION OF THE SIXTH AMENDMENT</u>

Mark S. Cohen
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.    Procedural History ............................................................................ 2

    B.    This District's Jury Plan.................................................................... 2

ARGUMENT ........................................................................................................................ 4

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Duren v. Missouri,*
439 U.S. 357 (1979) ................................................................................................ 5, 7

*Holland v. Illinois,*
493 U.S. 474 (1990) ...................................................................................................... 1

*Taylor v. Louisiana,*
419 U.S. 522 (1975) ...................................................................................................... 4

*United States v. Jackman,*
46 F.3d 1240 (2d Cir. 1995) ...................................................................................... 5, 7

*United States v. Johnson,*
21 F. Supp. 2d 329 (S.D.N.Y. 1998) ............................................................................ 5

*United States v. Kenny,*
883 F. Supp. 869 (E.D.N.Y. 1995) ............................................................................... 6

*United States v. Osorio,*
801 F. Supp. 966 (D. Conn. 1992) ............................................................................... 4

*United States v. Reyes,*
934 F. Supp. 553 (S.D.N.Y 1996) ............................................................................ 3, 4

*United States v. Rioux,*
97 F.3d 648 (2d Cir. 1996) ........................................................................................... 5

**Statutes**

28 U.S.C. § 1863(a) ...................................................................................................... 2

## PRELIMINARY STATEMENT

When the COVID-19 pandemic temporarily limited the availability of grand juries in the Manhattan courthouse, the government responded with an extraordinary measure. Rather than wait a short time until residents of counties constituting the Manhattan Division of this District could appear for grand jury service, the government, in its apparent determination to mark the anniversary of its indictment of Jeffrey Epstein with a July 2, 2020 announcement of the indictment and arrest of Ghislaine Maxwell, sought and obtained an indictment of Ms. Maxwell through a grand jury drawn from the White Plains Division. In doing so, the government procured Ms. Maxwell's indictment using a grand jury pool that excluded residents of the community in which Ms. Maxwell allegedly committed the offenses with which she is charged, and in which she will be tried, in favor of a grand jury drawn from a community in which Black and Hispanic residents are significantly underrepresented by comparison. The government thus violated Ms. Maxwell's Sixth Amendment right to be indicted by a grand jury drawn from a fair-cross section of the community.[1]

It was unnecessary for the government to take this step. According to an email from a court official filed in connection with a similar challenge to the government's practice, a Manhattan grand jury was seated as early as June 25, 2020—four days before Ms. Maxwell was indicted. *See* Exhibit A to Reply Memorandum in Support of Motion to Dismiss, *U.S. v. Balde,* No. 1:20-cr-00281-KPF (S.D.N.Y.), Dkt. No. 70-1 (filed Dec. 23, 2020). Had the government waited until that time, it might have been unable to meet its arbitrary July 2 deadline, and its press conference touting the indictment and arrest of Ms. Maxwell might have had slightly less

---

[1] The fact that Ms. Maxwell herself is neither Black nor Hispanic does not deprive of her of standing to raise this challenge. "[T]he Sixth Amendment entitles every defendant to object to a venire that is not designed to represent a fair cross section of the community, whether or not the systematically excluded groups are groups to which he himself belongs." *Holland v. Illinois,* 493 U.S. 474, 477 (1990).

impact.  But the government would have avoided violating Ms. Maxwell's Sixth Amendment right.  Its failure to do so mandates dismissal of the indictment.

## STATEMENT OF FACTS

### A.    Procedural History

On June 29, 2020, the government filed a sealed indictment of Ms. Maxwell in the Manhattan Division of this Court.  The government has conceded that Ms. Maxwell's indictment was obtained using a grand jury seated in White Plains, apparently with jurors drawn exclusively from the White Plains Division.  At no point, however, has the government alleged that Ms. Maxwell engaged in any unlawful conduct in the White Plains Division, or that any overt act in furtherance of the alleged conspiracies occurred in the White Plains Division.  To the contrary, the only specific location within this District that is referenced in the indictment is Epstein's residence on the Upper East Side of Manhattan, the location at which Ms. Maxwell allegedly intended for Minor Victim-1 to engage in unlawful sexual activity with Epstein.  Sealed Indictment ("Indictment"), Dkt. No. 1 (filed Jun. 29, 2020), at ¶¶ 6a, 11b, 17b.

The indictment of Ms. Maxwell, and apparently others in the wake of the COVID-19 pandemic, was a deviation from the established practice of indicting defendants in the division where the offense is alleged to have occurred and where the case will be tried.  As a result of the COVID-19 pandemic, the government apparently chose to stop using the Manhattan Master Wheel and to indict Ms. Maxwell using a White Plains grand jury.

### B.    This District's Jury Plan

The Jury Selection and Service Act of 1968 mandates that each federal district court "devise and place into operation a written plan for random selection of grand and petit jurors." 28 U.S.C. § 1863(a).  This District's current plan was adopted in 2009.  *See* Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the

Southern District of New York ("Jury Plan"), available at

https://nysd.uscourts.gov/sites/default/files/pdf/juryplan_feb_2009.pdf.  The Jury Plan uses voter

registration lists as the exclusive source of names of prospective jurors.  Jury Plan, Art. III.A.

From these names, two master jury wheels are constructed: one for the Manhattan courthouse

and one for the White Plains courthouse.

The Jury Plan provides that to fill the master wheels, jurors are to be drawn from each

county's voter registration list.  For each county, the proportion of jurors drawn should be the

same as the proportion of that county's number of registered voters to the total number of

registered voters for all of the counties in the respective wheels.  *Id.*, III.A.1, III.B.

The Manhattan master wheel contains names drawn from New York, Bronx,

Westchester, Putnam, and Rockland counties.  The White Plains master wheel contains names

from Westchester, Putnam, Rockland, Orange, Sullivan, and Dutchess counties.  For the three

overlapping counties (Westchester, Putnam, and Rockland), the names are apportioned among

the two master wheels so as to "reasonably reflect the relative number of registered voters in

each county" within the respective wheels.  *Id.*, Art. IV.B.  According to the Jury Plan, the

"Master Jury Wheels shall be emptied and refilled by not later than September 1 following the

date of each Presidential Election."  *Id.,* Art. III.B; *see also United States v. Reyes,* 934 F. Supp.

553, 555 (S.D.N.Y 1996).

The Jury Plan further provides that at least once a year, names are to be drawn randomly

from the master jury wheels in an amount sufficient to meet the anticipated demand for jurors for

the next six months.  Jury Plan, Art. III.D.  Those whose names are drawn are sent questionnaires

to determine their qualifications to sit as jurors, which they are instructed to return within ten

days.  *Id*. Art. III.E.  The qualified jury wheels comprise those individuals who complete and

return the questionnaire (and who are found to be qualified as jurors).  *Id.*, Art. IV.A.  As with

the master wheels, two separate qualified jury wheels are maintained:  one for Manhattan and

one for White Plains.  When jurors are needed, names are drawn at random from these wheels,

and summonses are sent to those whose names are drawn.  *Id.*, Art. IV.C; *Reyes*, 934 F. Supp. at

556.

In *United States v. Balde,* a case currently pending in this District before Judge Failla, the

defendant recently submitted, in connection with a similar challenge to the use of a White Plains

grand jury in a Manhattan case, an analysis from jury composition expert Jeffrey Martin, who

analyzed the racial and ethnic composition of the master and qualified jury wheels for Manhattan

and White Plains.  *See* Declaration of Jeffrey Martin in Support of Motion to Dismiss, *U.S. v.*

*Balde,* No. 1:20-cr-00281-KPF, Dkt. No. 61-1 (filed Nov. 9, 2020), Exhibit A ("Martin Decl.").

Because the jury wheels are emptied and refilled only every four years, following a presidential

election, and the defendant in *Balde,* like Ms. Maxwell, was indicted in June 2020, Ms.

Maxwell's grand jury was presumably drawn from the same wheels Mr. Martin analyzed.

Mr. Martin found significant underrepresentation of Black and Hispanic persons within

the White Plains qualified jury wheel—not only when compared to the eligible juror population

in the Manhattan counties (Martin Decl. ¶¶ 61-62, 69-70), but also when compared to the eligible

juror population of the District as a whole (*id.* ¶¶ 59-60, 67-68).

## ARGUMENT

The Sixth Amendment guarantees a criminal defendant a grand jury selected from a fair

cross-section of the community.  *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975).  Ms. Maxwell's

right under the Sixth Amendment to a grand jury drawn from a fair cross-section of the

community applies to the grand jury that indicted her.  *See, e.g., United States v. Osorio*, 801 F.

Supp. 966, 973-74 (D. Conn. 1992) (rejecting argument that Sixth Amendment's fair cross-

section protection does not apply to grand juries).  Here, the use of a White Plains jury resulted in the systematic underrepresentation of Black and Hispanic persons from the jury selection process, in violation of Ms. Maxwell's Sixth Amendment right.

In *Duren v. Missouri,* the Supreme Court set forth the three elements that must be shown to establish a *prima facie* violation of the fair cross-section requirement:  (i) that the group alleged to be excluded is a "distinctive" group in the community; (ii) that the representation of the group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (iii) that the underrepresentation is due to systematic exclusion of the group in the jury selection process.  439 U.S. 357, 364 (1979).  Once a *prima facie* showing has been made, the government bears the burden of showing attainment of a fair cross-section to be incompatible with a significant state interest.  *Id.* at 368.

With respect to the first element, there can be no serious dispute that Blacks and Hispanics are "distinctive" groups in the community.  A claim of underrepresentation of those groups thus satisfies the first element of a fair cross-section claim.  *United States v. Jackman*, 46 F.3d 1240, 1246 (2d Cir. 1995).

In considering the second element—whether the representation of the group is fair and reasonable—the Court must determine "whether either or both of these two 'distinctive' groups are 'significant[ly] underrepresent[ed]' in the jury selection process."  *Id.*  As constituted, the qualified jury wheels are a proper measure for evaluating the degree of underrepresentation as compared to the relevant community.  *United States v. Rioux*, 97 F.3d 648, 655-56 (2d Cir. 1996).

While *Duren* did not define which community is relevant for a fair cross-section analysis, it is widely understood to mean "the district or division where the trial is to be held."  *United*

*States v. Johnson*, 21 F. Supp. 2d 329, 334-35 (S.D.N.Y. 1998); *see also United States v. Kenny*, 883 F. Supp. 869, 874 (E.D.N.Y. 1995). The only geographic nexus in this case to this District—Epstein's New York residence—is in the Manhattan Division, and the case will be tried within the Manhattan Division. The appropriate comparison here is therefore between the Manhattan Division and the qualified wheel for White Plains.

Mr. Martin's analysis found significant underrepresentation of both Black and Hispanic persons in the White Plains qualified wheel when compared to the eligible juror population of the Manhattan Division. Mr. Martin found that the eligible juror population of the Manhattan Division is 20.92% Black and 28.06% Hispanic (Martin Decl. ¶ 20), while the White Plans qualified wheel refilled in February 2017 (and thus in effect in 2020) was 8.76% Black and 10.48% Hispanic (*id.* ¶ 55). Thus, Mr. Martin found an "Absolute Disparity" of 12.16% underrepresentation for Black jurors (20.92% minus 8.76%) and an "Absolute Disparity" of 17.58% for Hispanic jurors (28.06% minus 10.48%). *Id.* ¶¶ 61-62. Mr. Martin also found significant underrepresentation using a "Comparative Disparity" analysis (*id.* ¶¶ 69-70), which reflects a cognizable group's absolute disparity as a percentage of the population percentage of that group, and a standard deviation analysis (*id.* ¶¶ 74-75), which measures the statistical significance of a group's underrepresentation.

Mr. Martin further found that there would be significant underrepresentation even if the White Plains qualified wheel were compared to the eligible juror population of the entire Southern District of New York. For the whole District, the eligible juror population is 18.09% Black and 23.41% Hispanic. *Id.* ¶ 19. Thus, when compared to the whole District, an absolute disparity analysis of the White Plains qualified wheel showed an underrepresentation of 9.33% for Black jurors and 12.93% for Hispanic jurors. *Id.* ¶¶ 59-60. As with the comparison to the

Manhattan Division, Mr. Martin found statistically significant underrepresentation using both the comparative disparity and standard deviation analyses. *Id.* ¶¶ 67-68, 74-75.

To satisfy the third *Duren* element, a party need only establish that the underrepresentation is due to the systematic exclusion of a cognizable group during the jury selection processes—*i.e.,* that the discrepancy is "inherent in the particular jury-selection process utilized." *Duren,* 439 U.S. at 366. Regardless of whether the White Plains qualified jury wheel is compared to the eligible jury population of the Manhattan Division or to that of the entire Southern District of New York, the primary reason for the significant underrepresentation of Black and Hispanic jurors on the White Plains wheel is the choice to pursue an indictment from a grand jury drawn from the White Plains Division, as opposed to the Manhattan Division or the District as a whole. This decision resulted in the systematic exclusion of eligible jurors residing in the southern counties of this District.

Moreover, Mr. Martin's standard deviation analysis found that regardless of whether the Manhattan Division or the entire District is used as the point of comparison, the percent of both Black and Hispanic jurors in the White Plains jury wheel differs from that in the comparison population by more than three standard deviations. Martin Decl. ¶¶ 74-75. According to Mr. Martin, if there is no systematic overrepresentation or underrepresentation of a distinctive group, the divergence of demographics should exceed three deviations only approximately 0.5% of the time. *Id.* ¶ 73. Thus, the underrepresentations here are "not the result of random factors, chance, or luck" but "the result of a systematic process that under represents" each group. *Id.* ¶¶ 74-75. *See Jackman*, 46 F.3d at 1248 (finding fair cross-section violation due to systematic exclusion of residents from communities with large minority populations).

Thus, regardless of whether the White Plains qualified jury wheel is compared to the eligible juror population of the Manhattan Division or that of the entire District, Black and Hispanic jurors are systematically underrepresented.  Ms. Maxwell has therefore made a *prima facie* showing of a violation of the fair cross-section requirement.

Accordingly, the government has the burden of showing that attainment of a fair cross-section would have been incompatible with a significant state interest.  The government cannot do so.  To the extent that the government asserts a significant state interest in containing COVID-19, it cannot show that attainment of a fair cross-section would have been incompatible with that interest.  As noted above, a Manhattan grand jury convened as early as June 25, 2020; there appears to have been no reason, other than a publicity-driven desire to arrest Ms. Maxwell on the anniversary of the Epstein indictment, why the government could not have waited until that time.  The indictment therefore violates Ms. Maxwell's Sixth Amendment right and should be dismissed.

Dated: January 25, 2021
      New York, New York

            Respectfully submitted,

            */s/ Mark S. Cohen*
            Mark S. Cohen
            Christian R. Everdell
            COHEN & GRESSER LLP
            800 Third Avenue
            New York, NY 10022
            Phone: 212-957-7600

            Jeffrey S. Pagliuca
            Laura A. Menninger
            HADDON, MORGAN & FOREMAN P.C.
            150 East 10th Avenue

Denver, Colorado 80203
Phone: 303-831-7364

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on January 25, 2021, I served by email, pursuant Rule 2(B) of the Court's individual practices in criminal cases, the within memorandum and any accompanying exhibits upon the following:

Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Maurene.comey@usdoj.gov
Alison.moe@usdoj.gov
Lara.Pomerantz@usdoj.gov
Andrew.Rohrbach@usdoj.gov

                     */s/ Christian Everdell*