UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

–v–

Ghislaine Maxwell,

Defendant.

20-CR-330 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

The Defense on November 1, 2021, noticed eight expert witnesses. Def. Br., Ex. 1 ("Notice"). Two of those experts, Dr. Park Dietz and Dr. Elizabeth Loftus, are expected to offer opinions that rebut opinions of the Government's expert witness, Dr. Lisa Rocchio. The Government on November 8, 2021, filed a motion to partially preclude the testimony of Dr. Dietz and Dr. Loftus. Dkt. No. 424. The Court has already addressed that motion.

On November 15, 2021, the Government moved to fully or partially preclude the testimony of the remaining six experts. The Defense filed a response on November 19, 2021.

The Court addresses the motion to preclude Dr. Hall in this separate opinion. It will address the other five experts in public rulings.

### I. Legal standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. That rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court exercises a "gatekeeper function" in assessing the admissibility of expert testimony. *Restivo v. Hessemann*, 846 F.3d 547, 575 (2d Cir. 2017). To determine whether an expert's method is reliable, the Court considers the non-exhaustive list provided by the Supreme Court in *Daubert*, including whether the expert's method has been tested, whether it has been subjected to peer review, the rate of error, standards controlling the method's operation, and whether the method is accepted by the expert community. *United States v. Kidd*, 385 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993)).

But Rule 702 ultimately sets a "liberal" and "permissive" standard of admissibility. *Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005). In particular, not every expert admissible under *Daubert* need rely on a method that conforms with "the exactness of hard science methodologies." *E.E.O.C. v. Bloomberg L.P.*, No. 07-CV-8383 (LAP), 2010 WL 3466370, at *13–14 (S.D.N.Y. Aug. 31, 2010) (quoting *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006)).

Additionally, the procedure for disclosing expert witnesses is governed by Federal Rule of Criminal Procedure 16. That rule states that when the Government makes a request, the Defense "must . . . give to the government a written summary of any testimony that the defendant intends to use under Rules 702. . . . This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R.

Crim. P. 16(b)(1)(C).  The purpose of this rule is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Civ. P. 16(b)(1)(C) advisory committee's note to 1993 amendment.  Thus, to satisfy Rule 16, a notice must not merely describe the "general topics" on which experts will testify but actually "summarize the experts' *opinions* about those topics" and "describe the bases for the experts' opinions."  *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (emphasis added); *United States v. Valle*, No. 12-CR-847 (PGG), 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013) ("Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions.").

If the Defense's disclosure of an expert witness does not satisfy Rule 16, the Court has "broad discretion" to fashion an appropriate remedy.  *Ulbricht*, 858 F.3d at 115.  That discretion is guided by factors including "why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances."  *Id.* (quoting *United States v. Lee*, 834 F.3d 145, 159 (2d Cir. 2016)). When a disclosure merely lists general topics on which the expert might testify, the Second Circuit has several times held that the district court has discretion to exclude the expert entirely. *See id.* at 118; *United States v. Vaccarelli*, No. 20-3768-CR, 2021 WL 4805218, at *2 (2d Cir. Oct. 15, 2021).

**II.    Discussion**

As a preliminary matter, the Defense argues that the Government's motion is "premature" because the Government's arguments are about the relevance and prejudice of the witnesses' testimony, not their qualifications or the reliability of their methods under Rule 702.

Def. Br. at 1, 5–6.  But one aspect of the Rule 702 and *Daubert* inquiry is "fit," which asks "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Alto v. Sun Pharm. Indus., Inc.*, No. 1:19-CV-09758 (GHW), 2021 WL 4803582, at *3 (S.D.N.Y. Oct. 13, 2021) (quoting *Daubert*, 509 U.S. at 591).  Fit is satisfied if the expert's opinion would assist the jury's decision on a relevant question of fact without "usurp[ing] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Id.* (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).  The Court finds that at least some of the Government's arguments that go to fit are ripe for preliminary resolution now.  Other aspects of the Government's motion can be resolved only with additional information and the context of trial.

### A. The Court will preclude the expert testimony of Dr. Ryan Hall

The Government moves to preclude the expert testimony of Dr. Ryan Hall.  Dr. Hall was retained ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The Defense anticipates that Dr. Hall will testify as to approximately four opinions.  First, "[h]e will offer the opinions and diagnoses contained in his report."  Notice at 12.  Second, he will testify on "the bases for those opinions[ ] and the significance of the diagnoses and opinions."  *Id.*  Third, "[h]e will testify about the facts and circumstances surrounding the evaluation" and "disclosures made [Alleged Victim 4]."  *Id.*  And fourth, he will testify to "the fact that [Alleged Victim 4] did not identify Ms. Maxwell as a perpetrator of any abuse."  *Id.*

4

The Government argues, and the Court agrees, that the first two opinions based on Dr. Hall's training and experience as a psychiatrist and so are expert opinions subject to Rule 702. The latter two opinions are not expert opinions but instead testimony of fact that may or may not be admissible under other rules of evidence.

The Court will address the expert opinions first. The Government argues that Dr. Hall's testimony on psychological diagnoses is irrelevant and prejudicial under Rules 401 and 403. The Second Circuit has set out controlling case law to guide the Court's decision:

> Evidence of a witness's psychological history may be admissible when it goes to her credibility. In assessing the probative value of such evidence, the court should consider such factors as the nature of the psychological problem, the temporal recency or remoteness of the history, and whether the witness suffered from the problem at the time of the events to which she is to testify, so that it may have affected her ability to perceive or to recall events or to testify accurately.

*United States v. Sasso*, 59 F.3d 341, 347–48 (2d Cir. 1995) (cleaned up); *see also United States v. Hamlett*, No. 19-3069, 2021 WL 5105861, at *2 (2d Cir. Nov. 3, 2021); *United States v. Vitale*, 459 F.3d 190, 196 (2d Cir. 2006).

Even if psychological history is probative according to these factors, the Court still retains discretion to exclude the evidence if it is substantially prejudicial under Rule 403. *Sasso*, 59 F.3d at 347–48.

Dr. Hall's report lists the following ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████

5

The Court will preclude Dr. Hall's testimony on these psychological diagnoses. Applying the considerations in *Sasso*, the diagnoses have little probative value. First, the report is now over 12 years old. Courts in this circuit regularly find that diagnoses more than 10 years old lack probative value. *E.g.*, *United States v. Bari*, 750 F.2d 1169, 1179 (2d Cir. 1984) (finding that more than 10 years is too remote); *United States v. Glover*, 588 F.2d 876, 878 (2d Cir. 1978) (per curiam) (12 years too remote); *United States v. Dupree*, 833 F. Supp. 2d 255, 264 (E.D.N.Y. 2011), *vacated and remanded on other grounds*, 706 F.3d 131 (2d Cir. 2013) (13 years too remote); *United States v. Paredes*, No. 99-CR-290 (PKL), 2001 WL 1478810, at *1 (S.D.N.Y. Nov. 20, 2001) ("A psychological condition from ten years earlier, however, is likely to be irrelevant."). The diagnoses are therefore too remote to bear on Alleged Victim 4's credibility as a witness at trial.

Second, the nature of the conditions and their effect on memory or perception at the time of the events in question do not favor admission. Dr. Hall's report does not delineate clearly which conditions existed at the time of Epstein's abuse, but it appears that at least ███ ████████████████████████████████████████████████████████████████ ████████████████████████ But at no point in his report does Dr. Hall suggest that these conditions—or any other diagnosed conditions—may have affected Alleged Victim 4's perception of events or her recollection of those events. Like in *Sasso*, "there was no indication that [the witness] was delusional or paranoid, or had any difficulties in memory or perception." 59 F.3d at 348.

In its response, the Defense homes in first on ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

6

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████ But none of these traits affect memory or recall, which is the primary purpose for admitting evidence of mental conditions identified in *Sasso*, 59 F.3d at 348.

The Defense also emphasizes the diagnosis for ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████ But based on the current record, Dr. Hall's description falls short of demonstrating that this ███████ "affect[s] her ability to perceive or to recall events or to testify accurately." *Vitale*, 459 F.3d at 196 (quoting *Sasso*, 59 F.3d at 348); *see United States v. Lopez*, 611 F.2d 44, 45 (4th Cir. 1979) ("[M]any psychiatric problems . . . which a witness may have had are without any relevancy to the witness' credibility, concerned as it is with whether the witness' mental impairment is related to his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime." (cleaned up)). ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

The Defense also argues that Dr. Hall diagnosed Alleged Victim 4 with ███████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ In a similar line of cases, courts in this circuit have held that expert diagnoses of depression are not probative of credibility. *E.g.*, *Sasso*, 49 F.3d at 348 (finding that a diagnosis of depression lacked probative value); *United*

8

*States v. Giovinco*, No. 18-CR-14 (JSR), 2020 WL 832920, at *2 (S.D.N.Y. Feb. 20, 2020) (finding that depression did not impact the witness's "ability to accurately perceive or recall" relevant events); *see also United States v. Cooper*, No. 15-CR-152 (RMC), 2017 WL 11496709, at *1 (D.D.C. Jan. 27, 2017) (excluding diagnosis of major depressive disorder).

Last, the Defense points to the diagnosis for ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ But, again, this is not a basis for impeaching Alleged Victim 4's ability to testify truthfully under *Sasso*. 59 F.3d at 348; *see also Hernandez v. Kelly*, No. 09 CV 1576 TLM LB, 2011 WL 2117611, at *5 (E.D.N.Y. May 27, 2011) (explaining that a condition must "bear[ ] on [a witness's] ability to rationally perceive events at the time and to accurately recollect and report his perceptions").

In assessing the relevance of each of these diagnoses, the Court also takes account of Dr. Hall's conclusion that despite her several conditions, Alleged Victim 4 has no "psychotic believes [sic], hallucinations or delusions." Report at 92; *see also id.* at 80 ("she reports no period of . . . hallucinations"). Further, Dr. Hall several times commented that Alleged Victim 4's memory was very accurate. *E.g., id.* at 85 ("No . . . alterations in memory, or changes in orientation or level of attention."); 92 ("Her *memory was impeccable* and at multiple times during the evaluation she pointed out to the examiner questions he did or didn't ask. She reported her *memory is 'perfect'* and that she will remember every detail of the room in which the evaluation was done." (emphases in original)). On review, the Court cannot identify any point in the report at which Dr. Hall doubts Alleged Victim 4's account of events. Instead, he appears to summarize and accept her story of sexual conduct with Epstein. *Id.* at 100–01. In short, none of

9

the diagnoses in Dr. Hall's report are adequately tied to Alleged Victim 4's credibility as a witness. *See Hamlett*, 2021 WL 5105861, at *2.

Even if any diagnosis were probative, the Court further finds that Rule 403 prejudice outweighs. First, the testimony may confuse jurors with old diagnoses that have little connection to the conduct at issue or Alleged Victim 4's credibility today. *See id.* Confusion is particularly likely here given that Dr. Hall's report is at times unclear and even contradictory, as with the confusion over ▮▮▮▮ explained above. *Id.* Second, the Court takes account of the risk that jurors will stereotype a witness with ▮▮▮▮ or incorrectly assume that a diagnosed mental condition renders the witness untrustworthy. *See Hernandez*, 2011 WL 2117611, at *5. Third, mental health diagnoses are of a particularly sensitive nature and, if not relevant, the witness's privacy should not be invaded. *Paredes*, 2001 WL 1478810, at *2 (citing *In re Doe*, 964 F.2d 1325, 1328–29 (2d Cir. 1992)).

And fourth, Dr. Hall's testimony would be cumulative and cause undue delay. The Government anticipates that several aspects of Alleged Victim 4's mental health history will be admitted either on direct or cross-examination, including that Alleged Victim 4 currently ▮▮▮▮ The Second Circuit has previously held that where relevant issues of mental conditions can be aired on cross-examination, the district court may preclude the witness's medical records and expert testimony. *Vitale*, 459 F.3d at 196; *Dupree*, 833 F. Supp. 2d at 265 (applying *Vitale* and *Sasso*). The Court concludes that here, the cross-examination identified by the Government on Alleged Victim 4's current medication for ▮▮▮▮, along with lines of cross-examination unrelated to mental health, will provide the jury a sufficiently "discriminating appraisal" of Alleged Victim 4's credibility such that Dr. Hall's testimony and report is unnecessary. *Drake v.*

*Woods*, 547 F. Supp. 2d 253, 266–67 (S.D.N.Y. 2008) (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990)).  The Court therefore concludes that the minimal probative value of each of Dr. Hall's diagnoses of Alleged Victim 4 is substantially outweighed by the risk of unfair prejudice.

But this balancing of Rules 401 and 403 is based on the present record.  It is conceivable that an additional proffer from the Defense that raises the probative value of a diagnosis, such as that for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, would change the Court's calculation.  *Cf. George*, 532 F.3d at 937 ("We do not foreclose the possibility that testimony by an expert . . . could have shown evidence of [the witness's] condition to be relevant to her credibility . . . . But without such testimony, [defense] counsel had only words such as 'episodes of rage' and 'racing thoughts.'"); *Hamlett*, 2021 WL 5105861, at *2 (affirming exclusion of a psychological witness that failed to show a "clear link between any particular mental health diagnosis and a witness's credibility").

The Defense argues that apart from diagnoses of her mental health conditions, the Defense should be permitted to admit Dr. Hall's conclusion as to Alleged Victim 4's substance abuse ▮▮▮▮▮▮▮.  Def. Br. at 12–13 (collecting cases).  The Second Circuit instructs:

> It is, of course, within the proper scope of cross-examination to determine whether a witness was under the influence of drugs or narcotics or alcohol at the time of observation of events in dispute or at the time the witness is testifying.  As Wigmore points out, however, a general *habit of intemperance* tells us nothing of the witness's testimonial incapacity unless it involves actual intoxication at the time of the event observed or at the time of testifying.

*United States v. DiPaolo*, 804 F.2d 225, 229–30 (2d Cir. 1986) (cleaned up) (cited in Gov't Br. at 11 and Def. Br. at 12); *accord United States v. Robinson*, 583 F.3d 1265, 1272 (10th Cir. 2009) ("Illegal drug use does not merely bear on the [confidential informant's] veracity but also on his capacity as a witness.").

11

The Court will therefore permit the Defense to cross-examine Alleged Victim 4 about her use of substances during and after the conduct in question. Indeed, the Court was already under the impression that the Defense intended to pursue this line of cross-examination after the *Daubert* hearing. Nov. 10 Tr. at 157 ("[D]o you intend to impeach any witnesses based on substance abuse? . . . Yes.").

But the extensive case law cited by the Defense about cross-examining witnesses on their substance use does not justify the request to admit Dr. Hall's testimony on substance use and ▮▮▮▮ For example, in *United States v. Vitale*, the district court gave the defense "wide latitude when cross-examining [the witness] about his drug use and rehabilitation, including questions about the effects that the drugs had on his ability to perceive events when they occurred as well as on his memory at the time of trial." 459 F.3d at 196. The district court did not, however, permit the defense to admit the witness's drug rehabilitation treatment records into evidence. *Id.* Citing *Sasso*, the Second Circuit affirmed, explaining that through cross-examination alone, "the jury was well aware of . . . [the witness's] drug abuse and treatment history." *Id.* The Second Circuit has made such a distinction—permitting cross-examination on drug use but excluding a formal diagnosis of ▮▮▮▮—in several cases. *E.g.*, *DiPaolo*, 804 F.2d at 230; *Dobson v. Walker*, 150 F. App'x 49, 52 (2d Cir. 2005) (explaining that cross-examination about a witness's drug use before witnessing a murder would be admissible, but the general fact that the witness uses drugs is not). The Defense does not cite any case law to the contrary. Even the nonbinding authority that the Defense refers to as "instructive," Def. Br. at 13, held only that a defendant had the right to review a witness's medical records and cross-examine the witness about his drug use, *Robinson*, 583 F.3d at 1271–75.

12

In addition to diagnosing Alleged Victim 4's mental conditions, Dr. Hall also concluded that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The Government moved to exclude this conclusion and the Defense does not make a case for admitting it. The Court will also preclude the opinion. In this circumstance, the lasting mental impact of a crime is at best "minimally probative" of whether that crime was committed. *United States v. Hendricks*, 921 F.3d 320, 329 (2d Cir. 2019). It also carries a high risk of Rule 403 prejudice by suggesting that the psychological impact on Alleged Victim 4 is relevant to Ms. Maxwell's guilt beyond a reasonable doubt. It would also cause substantial delay by opening the door to rebuttal evidence by the Government on Alleged Victim 4's mental health, which would likely lead to mini-trials on irrelevant issues.

Next, the disclosure states that Dr. Hall will testify to the "significance" of Alleged Victim 4's diagnoses. Notice at 12. First, the Court understands that Dr. Hall could not testify to the "significance" of mental health diagnoses without first testifying to what those diagnoses are. Because the Court is precluding Dr. Hall's testimony on Alleged Victim 4's diagnoses, the Court will also preclude Dr. Hall's testimony on their significance. Additionally, the current disclosure on this point does not satisfy Rule 16's requirement that the Defense provide Dr. Hall's *opinion* rather than just the general topic of the testimony. Even if the Court admitted Dr. Hall's testimony as to Alleged Victim 4's diagnoses, the Court would preclude his testimony on significance until more specific opinions are disclosed to the Government.

Next, the Defense anticipates that Dr. Hall will testify to the "bases for those opinions" in his report. *Id.* Dr. Hall's report refers not only to what Alleged Victim 4 told him during their in-person interview but also other records like ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *E.g.*, Report at 29–

13

63. These out of court statements would be hearsay if admitted for their truth, and so are presumptively inadmissible at trial. Fed. R. Evid. 802. The Defense identifies several means by which it may admit these hearsay statements. Def. Br. at 14–17.

First, "[u]nder Rule 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if 'experts in the field reasonably rely on such evidence in forming their opinions.'" *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). But Rule 703 does not permit an expert to "simply transmit that hearsay to the jury." *Id.* Rather, those underlying facts and data that would otherwise be inadmissible may be disclosed to the jury "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Here, the hearsay underlying Dr. Hall's diagnoses, including ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, would have little probative value unless the Government were to challenge the accuracy of Dr. Hall's diagnoses. *See United States v. Chai*, No. 13-CR-290 (PAC), 2015 WL 293995, at *3 (S.D.N.Y. Jan. 22, 2015). The Government represents in its brief that it would not do so in the event that Dr. Hall's diagnoses are admitted. Gov't Br. at 13. And admitting the underlying hearsay, without a relevant need to substantiate the accuracy of Dr. Hall's conclusions, would result in significant prejudice, including confusing the jury and delaying the trial with a large volume of unnecessary details. The Court therefore concludes that, based on the parties' current proffers, the facts and data underlying Dr. Hall's opinions are not admissible via Rule 703.

Second, the Defense says that Alleged Victim 4's statements are admissible under one of two hearsay exceptions in Rule 803. Def. Br. at 15. It says the statements were statements of her "then-existing state of mind . . . or emotional, sensory, or physical condition." Fed. R. Evid. 803(3). But while a number of Alleged Victim 4's statements to Dr. Hall may pertain to motives

14

or emotional condition, her statements made to Dr. Hall in ▮ about events that took place years earlier cannot be said to be "then-existing." *Id.* The Defense also says Alleged Victim 4's statements were "made for medical diagnosis or treatment." Fed. R. Evid. 803(4). The Court finds that this may be a permissible basis for admitting some of Alleged Victim 4's statements, though they must be "made for . . . medical diagnosis or treatment," must "describe[ ] medical history; past or present symptoms or sensations; their inception; or their general cause," and must otherwise satisfy Rules 401 and 403. Fed. R. Evid. 803(4)(A), (B); *see In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245–46 (E.D.N.Y. 1985), *aff'd sub nom.*, 818 F.2d 187 (2d Cir. 1987) (Weinstein, C.J.).[1] But without additional detail from the Defense on which portions of Dr. Hall's testimony it would seek to admit under this exception, the Court cannot make a definitive ruling.

The Defense does not mention Alleged Victim 4's ▮▮▮▮ cited by Dr. Hall in his report. The Court concludes that Alleged Victim 4's ▮▮▮▮ are inadmissible under Federal Rule of Evidence 609. Dr. Hall's report is not clear on the details of Alleged Victim 4's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These incidents, however, are now all over 10 years old, none appear to require proving "a dishonest act or false statement," and, for ▮▮▮▮▮▮, admitting the evidence is not necessary to fairly determine the guilt or innocence of Ms. Maxwell. Fed. R. Evid. 609 (a), (b), (d).

---

[1] The Defense also argues that Alleged Victim 4's statements would be "admissible for their effect on Dr. Hall in forming his opinion." Def. Br. at 15. But, like Rule 703, this justification is a relevant basis for admission only if the validity of Dr. Hall's diagnoses is put in question.

### B. The Court reserves judgment on the admissibility of Dr. Hall's fact testimony

Finally, two of Dr. Hall's anticipated opinions are fact testimony not subject to Rule 702. Specifically, Dr. Hall would testify that Alleged Victim 4 told him that she previously disclosed other sexual abuse to a prior mental health provider, ▇▇▇▇▇▇, but did not disclose abuse by Epstein to ▇▇▇. Def. Br. at 16.[2] Further, Dr. Hall would testify that in their interview Alleged Victim 4 "did not identify Ms. Maxwell as a perpetrator of any abuse." Notice at 12. The Defense argues these statements are admissible as prior inconsistent statements. Def. Br. at 16–17. The Government concedes that Dr. Hall's testimony here would be admissible, including potentially as a prior inconsistent statement, if relevant and not otherwise excludable. Gov't Br. at 16, 18.

The Court reserves judgment on this question, but provides this guidance. The Defense will cross-examine Alleged Victim 4 and, as the Court has previously ruled, it may ask whether Alleged Victim 4 on previous occasions implicated Ms. Maxwell in the alleged sexual abuse by Epstein. Nov. 1 Tr. at 27. Whether the Defense may then admit any of Dr. Hall's testimony will depend on Alleged Victim 4's response to that question, whether any prior statement is actually "inconsistent" with her response, *see United States v. Trzaska*, 111 F.3d 1019, 1024–25 (2d Cir. 1997) (reversing a district court's admission of prior statements that were not inconsistent), and whether the Defense satisfies the other requirements of admitting extrinsic evidence of a prior inconsistent statement under Federal Rule of Evidence 613.

---

[2] From the parties' briefing, the Court understands that the Defense would not seek to admit Dr. Hall's testimony about what Alleged Victim 4 told ▇▇▇ for the truth of the matter asserted, as that would be hearsay with no apparent exception. *See* Def. Br. at 16 (referring to Alleged Victim 4's statements to ▇▇▇ and stating "[t]his evidence is admissible as a prior inconsistent statement"). Even then, however, the Court is skeptical that a situation would arise in which this statement could be used to contradict Alleged Victim 4' testimony without assuming the statement's truth.

### III.     Conclusion

The Court therefore grants the Government's motion to preclude Dr. Hall's expert testimony.  Because this is a preliminary pre-trial ruling, it is possible that facts and circumstances at trial would alter the Court's analysis.  In that event, the Defense must re-raise its request to admit Dr. Hall as an expert witness.


SO ORDERED.

Dated: November 22, 2021

New York, New York

_____
ALISON J. NATHAN
United States District Judge