EXHIBIT 122. Both statements are false Rodriquez told Edwards he had responsive documents in his first deposition, and Edwards stated that they would have to return for a second deposition. (Deposition Rodriquez 29th July 2009 p.245) EXHIBIT 95 . The documents Rodriquez ultimately produced in his deposition became Exhibit 52).

4. The importance of the lie reveals that Edwards had access to Exhibit 52 for approximately 3 months before he contacted the FBI; a period of time in which Edwards's 'boss' was creating fake settlements relating to the Epstein case for millions of dollars (Uustal at 1.28.00) EXHIBIT 26. This was at the same time Mr. Edward's firm Rothstein Adler was creating fake settlements that were to be used to extort various billionaires Rothstein December 22, 2011Deposition EXHIBIT 109.

5. JKB (see fn 7) wrote that Petitioner only 'compiled' portions of Trial Exhibit 52 – in other words was not written by the Petitioner JKB Perversion of Justice at 318) EXHIBIT 15.

6. The Government knew or should have known that Trial Exhibit. 52 was not the Petitioners, nor was it written by her , that the "address book" did not reveal her knowledge, intent and guilt because the 'address book' was not hers and not authored by her as the Government improperly argued at closing (Tr.2881:1-2, 2884) EXHIBIT 92 .

7. The Government used witness Alessi to authenticate the book when the Government knew (or should have known) that the book was not the same as the one's in Epstein's house at the relevant period – because witness Alessi stated that the book the Government showed him was" not the same size or written in the same font" - the Government allowed him to perjure himself stating it was the same as those from Epstein's house (Tr.2881:14-15) EXHIBIT 92. Alessi testified that the books he recalled neither matched Trial Exhibit.52 in size nor font. (Tr 828:4-6, 851:20-22). EXHIBIT 93

8. At trial he 'has no personal knowledge', the books he recalled were a different size with a different font. (Tr.823: 828:5-6, 851:) EXHIBIT 93 inches thick and the size of a large telephone book - demonstrably this was not descriptive of the Exhibit 52 produced by the Government at trial. Contradicting Government testimony Tr:2881:14-156 EXHIBIT 92

Massage table

1. Parkinson testified he 'seized' Epstein's massage table from EPSTEIN'S bathroom in his Palm Beach residence (TR.1089 line 10-14) EXHIBIT 106. However, his grand-jury testimony, released in 2024, and not seen by Petitioner prior to 2024, shows he did not identify Epstein's table from his bathroom with a shower, but a different table

in an adjacent bathroom with a tub. (Parkinson GJ 110:5–24.) EXHIBIT 11. Carolyn, the sole witness to Courts 5 and 6, described the location of Epstein's massage table which was in a bathroom, with a steam room and a shower, no tub, (Tr 1521:18-25, 1522:1-12 EXHIBIT 12 . Parkinson was not truthful and the Prosecutors knew or should have known that when he said he seized the massage table this was a lie.

2. Altered Chain of Custody. Newly released Police property sheets show discrepancies in serial numbers and collection dates for the seized table. The massage table exhibit introduced at trial (Tr. 2893-2895) EXHIBIT 92 bears a different evidence tag than the inventory list signed by Det. Parkinson. No contemporaneous photograph matches the items displayed to the jury.

3. Mischaracterized Labeling. The "Made in California" sticker relied upon to satisfy interstate commerce was applied post-seizure; photographs taken during the 2005 raid show no such label.

4. On information and belief a Suppressed Forensic Report referenced in an internal FBI laboratory memo (2024 FOIA Radar on Line release Exh. E) states at paragraph 3 that adhesive residue suggested "recent affixation" inconsistent with 2005 manufacture. This report was never disclosed to the Petitioner. EXHIBIT 46 Vaughn Index

5. Inflammatory Use. The prosecution repeatedly referenced the table as a "symbol of Maxwell's participation," appealing to emotion rather than fact that the table exhibited had questionable provenance and date of production. (Tr. 3021:18-25) EXHIBIT 92.

6. The Government repeatedly mischaracterized the table as "the one " that Carolyn was abused on (Tr.2894;25, 2895:1-4) EXHIBIT 92. This is inconsistent with the Grand Jury evidence of Parkinson as discussed above and the suppressed forensic report referenced above.

Prejudice - The Massage Table and Trial Exhibit 52

The massage table was the 'linchpin' for proving interstate commerce. Without it, Counts 5 and 6 collapse. The unauthenticated evidence therefore affected the verdict.

Trial Exhibit 52

Alessi's was the sole authenticator for Ex 52 and his evidence was perjurious. Alessi testified that he recognized Ex. 52 as one of those books from Epstein's house (Tr. 2881:14-15) EXHIBIT 13 this was a lie exposed by his previous statements in which he stated Trial Exhibit 52 at trial was smaller and not written in the same font as the books he remembered TR 828 4-6, 851 20-22 EXHIBIT 13.

The Jurors made the wrong inference from the address book. Juror #50 stated in his Independent Interview Jan 5 2022 EXHIBIT 5, that the address book Scotty David said "the little black book also gave the jurors clues about how Maxwell and Epstein had

evaded accountability in the past. There were names of several Palm Beach police officers listed on a first-name basis in that book", David said.

D.  Legal Analysis

Introducing evidence known to be unreliable violates due process. Napue, 360 U.S. at 269; United States v. Stewart, 433 F.3d 273, 297 (2d Cir. 2006). The concealed FBI memo was Brady material because it impeached Parkinson's authentication and undermined the Government's jurisdictional theory. The combination of falsified chain-of-custody and misapplied labeling rendered the exhibit inadmissible under Fed. R. Evid. §403 (unfair prejudice). Concealing that Edwards was a confidential informant involved in the production of Exhibit 52, the address book, was as well a Brady violation. The government then forced Alessi to authenticate an exhibit in contradiction to his earlier statements under oath. Previously, under oath he had stated both that he recognized Ex 52 and that he did not recognize Ex 52 namely the font and the size of the book. The two statements cannot be truthful.

E.  Governing Law

Under Napue v. Illinois if the Government knowingly uses perjured testimony or fails to correct false testimony a defendant's due process rights are violated. Under US v Butler 955 F.3d 1052, 1053 (D.C. Cir. 2020 and US v Ausby, 916 F 3d 1089,1092 (DC Cir 2019) such conduct if proven can provide independent basis for relief under §2255.

F.  Conclusion on Point Five

We know from the press interviews with the jurors that these errors did affect the verdict (EXHIBIT 5) because the Government presented falsified and misleading physical evidence, they permitted Alessi and Parkinson to perjure themselves, and suppressed contradictory forensic reports, and concealed Edwards's role as a confidential informant Petitioner's conviction must be vacated or remanded for an evidentiary hearing.

POINT SIX

Mischaracterization of Property, Asset, and Financial Evidence Violated Due Process

The Government protects their source of its asset tracing under attorney client privilege Radar OnLine v. FBI Dkt 38 p.24) EXHIBIT 76. JKB (see fn7) writes that it was Edwards who asked the Court to appoint a receiver to take control of Epstein's assets JKB Book, Perversion of Justice, p.166, EXHIBIT 15. The Government admitted in Radar Online (id) that it had asset information, information not given to Petitioner in discovery.

The asset sheet, is expected to reveal when Epstein purchased 71st Street and completed the extensive renovation and moved in in 1996; and that the Santa Fe house did not exist

at the time Jane testified she was abused there undermining her credibility. It did not exist until 1999/2000.* The Palm Beach house was shut for extensive renovations revealing that Jane's memory of events that she recounted with specificity at those homes could not have occurred as she recalled, the new evidence would have undermined her credibility.

Further the Government pointed to a helicopter as the property of Petitioner because the entity holding title was named "Air Ghislaine". The corporate entity, other than sharing a common name , was not under the control of Petitioner. The asset sheet if properly and accurately compiled would reveal 100% control of the helicopter by Jeffrey Epstein.

A.   Overview

The Government misrepresented Petitioner's legitimate business transactions and property holdings to create an appearance of illicit gain. By portraying ordinary accounts and trust structures as instruments of crime—without factual foundation—the prosecution misrepresented material facts and violated due process and the rules of evidence.

B.   Governing Law

Convictions obtained through materially misleading financial evidence violate the Fifth Amendment. Mooney v. Holohan, 294 U.S. 103 (1935); United States v. Stewart, 433 F.3d 273, 297 (2d Cir. 2006). Evidence must be relevant and not substantially more prejudicial than probative. Fed. R. Evid. 403.

C.   Factual Background

Trial testimony suggested that Petitioner "co-owned Epstein's properties" and co-owned Epstein Jet (SH:44:1-9) EXHIBIT 52 and "derived income from victims' exploitation." In fact, contemporaneous deeds, bank records, and U.K. filings EXHIBIT 111  show that the assets were either Epstein's or held by foreign trusts unrelated to Petitioner and not derived from any of the alleged offenses. The Government's charts mis-dated transfers and omitted exculpatory notations showing repayments or gifts.

Additionally, an FBI summary presented as "Maxwell's account ledger" (GX 1453) was actually compiled by third-party civil counsel. The omission of source attribution misled the jury into believing it was an official Government document. New reporting shows that it was the plaintiff's lawyers who collected the financial data (JKB 166) EXHIBIT 14. There was no proof that the government checked or corroborated the work of the third party financially interested and financially motivate civil plaintiff's lawyers.

D.   Analysis

Where prosecutors introduce incomplete or distorted summaries, they must correct the record. Napue, 360 U.S. at 269. Failure to do so deprives the defendant of a

fair trial. The presentation of foreign trusts as criminal proceeds also constituted amendment of the indictment by expanding its scope to uncharged conduct, contrary to Stirone v. United States, 361 U.S. 212 (1960).

E.      Prejudice

The misleading financial narrative inflamed the jury and suggested wealth as evidence of guilt and a benefit of criminal conduct. Such prejudice goes to the heart of due process.

F.      Conclusion on Point Six

Because the Government knowingly misrepresented property and financial evidence, the judgment should be vacated or, at minimum, remanded for a hearing on prosecutorial misconduct.

POINT SEVEN

Amendment of Counts Three and Four

A.      Overview

Counts 3 and 4 of the indictment were effectively broadened at trial beyond the grand-jury charges, violating the Fifth Amendment's Grand Jury Clause when the judge refused to clarify or respond to a jury question.(TR 3140 AT 20; 3141 AT 3) EXHIBIT 134 Juror#50 newly revealed jurors were *"confused"* on legal interpretation of the law and on definitions (Reuters Jan 5 2022).EXHIBIT135 The judge was confused by the note and refused to clarify the juror's question or respond meaningfully (Tr 2759-2760). NOTE 3037 LINE 10-19.DKT 593 EXHIBIT 136 (Transcript 3126 line 16-21) EXHIBIT 137.

The Mann Acts had to be based on an intent to violate New York Law (Tr. 68:2-4. 277:3-6) EXHIBIT 74 flights had to be to New York. The Government argued that there was no need to add 'Florida to New York' to avoid the suggestion of a variance (Dkt 565 at 22) EXHIBIT 137.

Activity in New Mexico was not sufficient to convict on the Mann Act Counts. The Judge specially instructed the jury that Jane could not be considered for Count 4 (Transcript 3028, 3036-3038 EXHIBIT 137.

B.      Governing Law

Jurors sought to clarify in relation to Count 4 the law when they sent the judge two questions (Transcript 3126 line 16-21)(EXHIBIT 137   ) a question regarding "enticement" and a question regarding "travel from New Mexico" (EXHIBIT137) Juror #50 revealed the Jury was confused on terms such as "enticement", the law and per the

note Jane's travel from New Mexico. The Court failed to assist the Jurors out of their confusion particularly by not reminding the Jury that "Jane was not the minor identified in Count Four and you may not rely on her testimony as the basis for that Count" and as we now know from the new evidence the Court's failure to clarify and relieve the confusion of the Jury resulted in the Petitioner's conviction on that Count.

It is crucial when a Jury seeks clarification or an explanation of the law that (s)he gives a statement that clarifies or helps the jury out of their confusion. Kopskin 757 F.3d 168, 172 (2dCir. 2014) expanding timeframe and elements' (Tr 4213:18 -4222:7) (To the best of Petitioner's knowledge and belief as Petitioner no longer has access to these transcripts and relies upon notes.) The Government argued that there was no need to add 'Florida to New York' to avoid the suggestion of a variance in Juror instructions (Dkt 565 at 22) EXHIBIT 137. The lack of clarity allowed a constructive amendment to occur modifying the essential elements of the offense charged because the jurors were confused. United States v. Miller, 471 U.S. 130 (1985); United States v. D'Amelio, 683 F.3d 412 (2d Cir. 2012). Such error is per se reversible. Stirone v. United States, 361 U.S. 212, 217 (1960).

C. Factual Background

The confusion permitted a conviction based on 'related conduct'

Counts 3 and 4 alleged conspiracies to entice and transport a minor between 1994–1997. At trial, the Government argued that "decades-long grooming" continuing into the 2000s satisfied the counts. Jury instructions permitted conviction based on "related conduct," effectively expanding the time frame and elements and the refusal to alleviate the confusion of the jury allowed them to make an unsafe verdict. (Tr. 3139, 3140:1-18) EXHIBIT 94.

D. Analysis

Juror #50 revealed the Jurors confusion – they did not understand terms such as 'enticement' and that the instructions were confusing. EXHIBIT 122 January 5th 2022 (Trial Transcript 3140:10-14) EXHIBIT 135.

By allowing the conviction for conduct not charged and not clarifying the jurors' confusion, the Court constructively amended the indictment. See United States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir. 1996). The alteration of temporal and jurisdictional elements deprived Petitioner of notice and her right to a grand-jury determination. The Court's comment was "I don't know what the note is asking factually or legally." (Trial Transcript 2137:14-17) EXHIBIT 73

E. Conclusion on Point Seven