

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 16, 2026

**BY ECF**

Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Ghislaine Maxwell*,
                20 Cr. 330 (PAE)

Dear Judge Engelmayer:

      This is a criminal case, with two parties—the Government and defendant Ghislaine Maxwell—that is long since over. (*See* Dkt. 777 at 3175–77 (jury's guilty verdict on Counts One and Three through Six and verdict of acquittal on Count Two), 657 (Judge Nathan's denial of Maxwell's post-trial Rule 29 motion), 779 at 96–98 (Judge Nathan's oral imposition of sentence), 696 (Maxwell's judgment of conviction); *United States v. Maxwell*, 118 F.4th 256 (2d Cir. 2024) (the Second Circuit's affirmance of Maxwell's judgment of conviction); *Maxwell v. United States*, — S. Ct. —, No. 24-1073, 2025 WL 2823724 (Oct. 6, 2025) (the Supreme Court's denial of Maxwell's petition for a writ of *certiorari*)).[1] Accordingly, there are only two issues currently pending before this Court: (1) resolution of Maxwell's collateral challenge to her conviction and sentence, pursuant to 28 U.S.C. § 2255 (Dkt. 830); and (2) this Court's supervision, enforcement, and/or modification of a protective order that Judge Nathan issued years ago with respect to discovery materials that the Government provided to Maxwell, determining what the Government may make public without violating that protective order (Dkt. 811–20, 823, 825–28).[2] With regard to the latter, the Court modified the protective order to permit the Government to release publicly certain materials covered by the protective order, subject to limitations, so that the Government could comply with the Epstein Files Transparency Act, Pub. L. 119-38, 139 Stat. 656 (Nov. 19, 2025) (the "Act"); however, because the issue before this Court was the scope of the protective order—

---

[1] Unless otherwise noted, case quotations omit all internal citations, quotation marks, and previous alterations.

[2] Relatedly, this Court unsealed grand jury materials in this case, subject to certain redactions. (Dkt. 820).

as opposed to the Government's obligations under the Act—the Court did not, and respectfully should not, mandate such disclosures. (Dkt. 820 at 24).

Despite the narrow scope of the live issues before this Court, Representatives Ro Khanna and Thomas Massie now seek to use this criminal case—to which they are not parties—to enforce the provisions of the Act—which was passed after the Supreme Court denied Maxwell's petition for a writ of *certiorari*, thus rendering judgment final—by seeking relief in the form of oversight of the Department of Justice's compliance with the Act—which relief or cause of action are not provided for in any statute. And, having no Article III standing, they do so by seeking leave to appear as *amici curiae*, without once citing the purpose of *amici curiae*: to provide the Court with "neutral assistance in analyzing the issues before it." *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011). The Court thus should exercise its "broad discretion to … deny the appearance of amici curiae in [this] case." *United States v. Ahmed*, 788 F. Supp. 196, 198 n.1 (S.D.N.Y. 1992).

### *Amici Curiae Cannot Raise New Issues and Seek New Relief*

*Amici curiae* exist to provide the Court with "neutral assistance in analyzing the issues before it." *Picard*, 797 F. Supp. 2d at 452. Their function is not to raise new issues. *See, e.g., Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15 Civ. 2739 (LAP), 2022 WL 3536117, at *2 (S.D.N.Y. Aug. 18, 2022) ("An amicus cannot initiate, create, extend, or enlarge issues."); *Russell v. Bd. of Plumbing Exam'rs of Cnty. of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999) ("The *amicus* cannot raise or implicate new issues that have not been presented by the parties."); *cf. Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 436 n.5 (2d Cir. 2002) ("[A]n issue raised only by an *amicus curiae* is normally not considered on appeal."). Nor do *amici curiae* exist to join in the adversarial fray. *See e.g.*, *Russell*, 74 F. Supp. 2d at 351 ("The *amicus* cannot assume a fully adversarial position."); *S.E.C. v. Bear, Stearns & Co. Inc.*, No. 03 Civ. 2937 (WHP), 2003 WL 22000340, at *6 (S.D.N.Y. Aug. 25, 2003) ("Conferring *amicus* status on … partisan interests is inappropriate."). Because an "*amicus curiae* is not a party," *Cohen v. Empire Blue Cross & Blue Shield*, 176 F.3d 35, 41 (2d Cir. 1999), it is "precluded from engaging in adversarial activities," such as "mak[ing] independent motions," *Russell*, 74 F. Supp. 2d at 351; *see also, e.g., New York v. Nat'l Sci. Found.*, No. 25 Civ. 4452 (JPC), 2025 WL 1793858, at *6 (S.D.N.Y. June 30, 2025) (explaining that, in an *amicus* capacity, movant "would not have the right … to make motions"); *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 940 F.2d 792, 808 (3d Cir. 1991) (refusing to consider "the amici's request for substantive individualized relief"); *cf. Cardona v. Taylor*, 828 F. App'x 198, 199 n.1 (5th Cir. 2020) (concluding that it is "inappropriate" for an entity to "use[] its amicus position to make arguments as a party would").

Representatives Khanna and Massie's motion for leave runs afoul of all these rules. Seeking entry into a long-closed criminal case, the Representatives explicitly try to create a new issue by moving the Court to appoint a special master and independent monitor for the purpose of "compel[ling] the Department of Justice … to make [a] mandatory production under" the Act. (Dkt. 837 at 1, 838 at 1, 838-1 at 1). The supposed need for this oversight is an issue that neither party has raised, nor could they, as the narrow issue before this Court has been how the protective order can be modified to allow the Government to proceed under the Act, as opposed to enforcement of the

Act itself.[3] And the Court already reached a decision on that issue, modifying the protective order. (Dkt. 820 at 23–24). There is no pending issue—much less one touching on the extraordinary relief sought by the Representatives—with which *amici* could assist the Court. *Cf. Russell*, 74 F. Supp. 2d at 351 ("The primary role of the *amicus* is to assist the Court in reaching the right decision in a case affected with the interest of the general public."). In short, Representatives Khanna and Massie, who propose moving to appoint a special master to compel production of documents or to compel the testimony of SDNY officials (Dkt. 838-1 at 2), promise to exceed the well-defined role of *amici curiae*. *See Russell*, 74 F. Supp. 2d at 351 ("an *amicus* cannot … make independent motions" and "is precluded from engaging in adversarial activities such as motions to compel.").

Representatives Khanna and Massie do not seek merely to go well beyond the permissible bounds of an *amicus*; they do not even "come as a 'friend of the court' and provide the court with an objective, dispassionate, neutral discussion." *United States v. Gotti*, 755 F. Supp. 1157, 1159 (E.D.N.Y. 1991). Rather, they seek to vindicate "their own particular interests," *N.Y. SMSA Ltd. P'ship v. Town of Bedford*, No. 21 Civ. 03742 (PMH), 2022 WL 718641, at *4 (S.D.N.Y. Mar. 10, 2022), and advance their "vision of what the [EFTA review] should look like," *Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *6. Courts routinely deny motions for leave in this circumstance. *See, e.g.*, *Long Island Soundkeeper Fund, Inc. v. N.Y. Athletic Club*, No. 94 CIV. 0436 (RPP), 1995 WL 358777, at *1 (S.D.N.Y. June 14, 1995) ("Denial of leave to appear as amicus in a situation such as this, in which the applicant appears to have its own particular interests in the outcome of the litigation, is far from unprecedented."). So, too, should this Court.

### *Representatives Khanna and Massie Improperly Seek Judicial Enforcement of the Act*

In light of the Representatives' motion, this Court asked whether Representatives Khanna and Massie have Article III standing and whether the Court "has the authority to rule upon (or take action to bring about) DOJ's compliance with the Act." (Dkt. 833 at 1–2). Putting aside that this is clearly not the proper forum for the motion in the first place, the answer to both questions respectfully is "no."

*Representatives Khanna and Massie Lack Standing.* To have standing, a "plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). Most obviously absent here is an injury-in-fact, or an "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Representatives Khanna and Massie claim injury based on the Department of Justice's alleged noncompliance with the Act's production requirements. (Dkt. 838-1 at 1). But the Act does not provide any personal "statutory right to seek the

---

[3] Indeed, it is unclear how the Act ever could have been an issue in this criminal case. Maxwell's judgment became final when the Supreme Court denied her petition for a writ of *certiorari* on October 6, 2025. *Maxwell*, 2025 WL 2823724. The Act—which does not purport to offer relief to Maxwell from her conviction or sentence—was not even enacted until a month and a half later, on November 19, 2025.

information" at issue. *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 686 (D.C. Cir. 2023). The Act is unlike, for example, the Freedom of Information Act, which creates "an individual right to obtain information." *Nat'l Sec. Archive v. Cent. Intel. Agency*, 104 F.4th 267, 272 (D.C. Cir. 2024)); *see Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989). And, even if the Act did confer such a right, Representatives Khanna and Massie do not demonstrate that this informational injury caused them any harm. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("An asserted informational injury that causes no adverse effects cannot satisfy Article III."); *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 307–08 (2d Cir. 2024) (same). Put simply, their "generalized grievance is insufficient" for Article III standing. *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009); *see also Carney v. Adams*, 592 U.S. 53, 59 (2020) (same).

To the extent Representatives Khanna and Massie rely on their political offices—that they are "the leads of the Epstein Files Transparency Act" (Dkt. 838-1 at 1)—"individual members of Congress," such as Representatives Khanna and Massie, asserting "wholly abstract and widely dispersed" institutional injuries "do not have a sufficient 'personal stake' in this dispute and have not alleged a sufficiently concrete injury to have established Article III standing." *Raines v. Byrd*, 521 U.S. 811, 829–30 (1997); *see also*, *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 667 (2019) ("[I]ndividual members lack standing to assert the institutional interests of a legislature.").[4]

Accordingly, Representatives Khanna and Massie do not have standing to "raise issues concerning DOJ's compliance with the Act." (Dkt. 833 at 2).

*Respectfully, the Government submits that the Court Lacks the Authority to Enter the Requested Relief.* When "the Constitution or laws of the United States do not support a cause of action," a federal court "cannot reach out to award remedies." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74 (1992); *see also, e.g.*, *American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("[A] plaintiff must have a cause of action under the applicable statute."); *Fulton v. Fulton Cnty. Bd. of Commissioners*, 148 F.4th 1224, 1239 (11th Cir. 2025) ("[T]o get any form of legal relief in the federal courtroom, a litigant must have a cause of action.").

The Act does not provide a cause of action. *See, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 491 (2022) ("[C]reating a cause of action is a legislative endeavor."). Because "the statute does not

---

[4] The Supreme Court has recognized a very narrow exception to this rule: as *Raines* explained, in *Coleman v. Miller*, 307 U.S. 433 (1939), a state legislature was deadlocked regarding ratification of a Federal Constitutional amendment, the lieutenant governor cast a deciding vote in favor of the amendment, and the state senators who voted against the amendment sought "a writ of mandamus [in state court] that would compel the appropriate state officials to recognize that the legislature had not in fact ratified the amendment." *Raines*, 521 U.S. at 822. The Supreme Court held that "legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Id.* at 823. Needless to say, that proposition has no application here.

evince Congress' intent to create the private cause of action asserted," this Court may not "create[]" that "action … through judicial mandate." *Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017); *see also*, *e.g.*, *id.* at 133 ("If the statute does not itself so provide, a private cause of action will not be created through judicial mandate."); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979) ("[T]he mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf."); *cf. United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993) ("We have held that if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.").

With no standing and no cause of action, the Representatives are unable to seek the relief they request, and, respectfully, the Court is without authority to issue it. *See, e.g.*, *Frank v. Gaos*, 586 U.S. 485, 492 (2019) ("[F]ederal courts lack jurisdiction if no named plaintiff has standing."). Nor does this Court's "supervision of the protective order in this case or otherwise" (Dkt. 833 at 2) change the calculus. While this Court has the "inherent power to enforce [its] orders," *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 344 (S.D.N.Y. 2012), the protective order only: (1) reaches a subset of documents under review (*see* Dkt. 820 at 12 ("the Protective Order covers all discovery the prosecution made to the defense" in the *Maxwell* case)); (2) operates to protect victim privacy (*see* Dkt. 820 at 24); and (3) restricts what the Government *may* disclose, as opposed to mandating such disclosure (*see* Dkt. 820 at 24).[5] In short, the protective order simply does not provide a basis for judicial oversight of the Department's compliance with the Act.

\* \* \*

Representatives Khanna and Massie do not have standing, their stated objectives are inconsistent with the role of an amicus as well as the role of the Court, and, in any event, there is no

---

[5] As the Court is aware, in compliance with the protective order, as amended, the Government has "conducted," and continues to conduct, "a pre-publication, victim privacy-related review and redaction of certain of the materials required to be published pursuant to the directives of" the Act (Dkt. 826 at 1), has updated the Court on its progress to demonstrate compliance with the Court's protective order (Dkt. 826), and expects to update the Court again shortly.

Hon. Paul A. Engelmayer, U.S.D.J.
January 16, 2026
Page 6 of 6

authority permitting the Court to grant the Representatives the relief they improperly seek. The Court therefore should deny their motion for leave to file an *amicus* brief

        Respectfully yours,

        PAMELA J. BONDI
        United States Attorney General

        TODD BLANCHE
        Deputy United States Attorney General
        United States Department of Justice


        /s/ Jay Clayton
        JAY CLAYTON
        United States Attorney
        Southern District of New York